# EXHIBIT 4

DGCI-00000096

**Subject:** DGCI's CDA Claim under Contract No. SPE605-20-D-9518

**Date:** Thursday, March 20, 2025 at 5:53:16 AM Eastern Daylight Time

**From:** Patterson, Augustus Jr CIV DLA ENERGY (USA)

**To:** sklute@FEDGOVcontractslaw.com

**CC:** Rodriguez, Orlando Sr CIV DLA ENERGY (USA)

**Attachments:** CO Decision_DGCI Claim_Signed.pdf

Good morning Mr. Sklute,

I hope you are well.  Please find attached to this email, the CO Final Decision in response to DGCI's CDA under SPE605-20-D-9518.

*V/r*

*Augustus "Gus" Patterson Jr.*
Contracting Officer
Ground Fuels Division IV
Direct Delivery Fuels- FEPDA
Defense Logistics Agency Energy
Cell  571-585-1435
Fax: 571-767-8506
augustus.patterson@dla.mil

Information contained in this email message and attachments may contain Source Selection Information -See FAR 2.101 and 3.104. or may contain information protected under 5 U.S.C. 552a, Privacy Act of 1974 as Amended. Disclosure of this information is governed  under the Privacy Act Disclosure and/or DOD Privacy Act Disclosure guidelines.  If you have received this email in error, reply to the sender indicating such and delete all associated messages from your email system.

DGCI-00000097



**DEFENSE LOGISTICS AGENCY**
ENERGY
8725 JOHN J. KINGMAN ROAD, SUITE 3821
FORT BELVOIR, VA 22060-6222

IN REPLY
REFER TO:    DLA Energy-FEPD                                     March 20, 2025

Sklute & Associates Suite 600
12505 Park Potomac Avenue
Potomac, Maryland 20854

FROM: DLA Energy (Mr. Augustus Patterson Jr., Contracting Officer)

SUBJECT: DGC International (DGCI) Request for Economic Price Adjustment.

Dear Mr. Sklute,

The Defense Logistics Agency Energy (DLA Energy) is in receipt of DGCI Corporation's
(DGCI) request for a price adjustment on contract number SPE605-20-D-9518. The contracting
officer reviewed DGCI's request for an Economic Price Adjustment and, for the reasons detailed
below, **denied** DGCI's request for a price adjustment in the amount of **$7,331,663.71** on
December 19, 2024**.**

On February 25, 2025, DGCI submitted a letter converting their request into a certified claim
under the Contract Disputes Act of 1978 but added no additional facts. Therefore, DLA's
analysis is unchanged. The contracting officer hereby denies DGCI's claim in the amount of
$7,331,663.71. This is the Contracting Officer's final decision.

**DESCRIPTION OF CLAIM**

On May 22, 2023, DGCI, a prime contractor for DLA Energy, submitted a request for an
Economic Price Adjustment (EPA) to CLIN 0006 of contract number SPE605-20-D-9518, in the
amount of $5,527,502.11 for the delivery of JP8 fuel to Al Asad Air Base (AAAB). On April 1,
2024, DGCI submitted a supplemental request increasing the claim to $7,331,663.71. DGCI
claims the PLATTS Arab Gulf Jet Fuel price escalator, failed to substantially and consistently
predict the cost of the fuel purchased in Iraq, under the forementioned contract number. DGCI
states the contract clause B19.02, entitled "Economic Price Adjustment (Overseas) (DLA Energy
Jan 2012), is the basis for this request. Specifically, pursuant to paragraph (g)(4) of the EPA
Clause, DGCI requests the contracting officer determine that the index did not reflect the market
starting in November 2021 and that DLA Energy modify the contract to revise the contract's price
indicator (PLATTS) listed in paragraph (k) of the clause for CLIN 0006 to substitute Iraq's Oil
Products Distribution Center's (OPDC) prices effective November 2021 through October 2023,
for the Contract's PLATTS' Arab Gulf March 2019 Reference Price Indicator. DGCI claims
during this period that the PLATTS indicator consistently and substantially failed to reflect
market conditions and that it is entitled to the substitution. DGCI further argues that pursuant to
the clause, if this determination is made, it would be entitled to the difference between the index
in the contract and the OPDC price, less the amount it built into its initial offer due to DGCI's
awareness of the price difference.

See Selection Information See FAR 2.101 and 3.104                    DGCI-00000098

## BACKGROUND

DGCI was awarded contract number SPE605-20-D-9518 for the delivery of various fuel products to multiple locations in Iraq, which included CLIN 0006 to delivery 53,46,000 gallons to AAAB Iraq, with a three (3) year period of performance. This was an Indefinite Delivery (Requirements) fixed price type contract with economic adjustment. Under this type of contract, the price is adjusted according to a predetermined fuel indicator, but otherwise fixed. The contractor assumes most of the risk for this type of contract for the price of fuel during performance. The contract was awarded in accordance with the format in Federal Acquisition Regulation (FAR) Subpart 12.6, as supplemented by information included in RFP SPE605-19-R-0212. Performance started on April 8, 2020, and was due to expire on April 7, 2023. On December 06, 2022, modification P0010 was issued to extend the contract three (3) months to July 7, 2023, and on May 30, 2023, the contract was extended another three (3) months to October 7, 2023, via modification P00015.

DGCI initially submitted its offer on May 20, 2019, in response to the solicitation. In its proposal, DGCI noted its familiarity and experience with purchasing fuel from the Government of Iraq (GoI) and delivering under DLA contracts. It stated that "over the past several years, DGCI has received over 100 sole source One-Time Buys for emergency deliveries for fuel products across Iraq and Syria." Based on that extensive experience, DGCI explained that "the GoI has instituted a policy whereby only jet fuel purchased from the Ministry of Oil will receive a PMNOC." DGCI further acknowledged that it sometimes had higher prices than its competitors because it understood "the actual costs of delivering specification product on-time in Iraq." It also noted it had priced its proposal to account for "the new requirement to source Aviation Turbine Fuel from the Ministry of Oil, and historical data from ordering history…" Accordingly, as stated in its request for the adjustment, DGCI was aware of the price difference between OPDC and Platts and built that difference into its offer as a contingency.

DGCI submitted its offer in May 2019, but rather than using data from May 2019 or an average of the data from several preceding months, DGCI chose to use data from March 2019. The solicitation used a March 2019 base reference price from Platts, however, DGCI had access to OPDC and PLATTS pricing for the months prior to March 2019 and for the more recent months. Additionally, DGCI claims it built $0.3896 into its offer to account for the difference using an OPDC invoice dated February 24, 2019, which listed a price of $0.58 per liter as the price "of one Liter." However, in an email dated June 1, 2021, DGCI represented that it bought 1,000,000 liters of jet fuel on March 5, 2019, at $0.61 per liter. Had DGCI used this pricing, the difference between OPDC and Platts would have been $0.5031 per gallon rather than $0.3896.

DGCI also had multiple opportunities to revise its price prior to award. DGCI provided pricing on September 11, 2019, as part of its response to a discussions letter, but apparently chose to keep the same pricing in its offer to account for the difference between PLATTS and OPDC. In September 2019, the price difference between OPDC and PLATTS was approximately $0.5049 based on a representation from DGCI that it had paid $0.59 per liter for 2,000,000 liters of jet fuel on September 19, 2019, and the September 2019 Platts pricing. DGCI had a second opportunity to revise its price when it submitted a response to a second round of discussions on October 16, 2019. At that time, the price difference between OPDC and Platts was approximately $0.5422 per

DGCI-00000099

gallon based on a representation from DGCI that it had paid $0.62 per liter for 1,000,000 liters of jet fuel on October 2, 2019, and the Platts October 2019 pricing. DGCI had a third opportunity to revise its price when it submitted a third response to discussions on October 27, 2019, at which time the price difference would have also been $0.5422 per gallon.

Based on all offerors' final pricing, DGCI's offer was the third lowest price technically acceptable offeror for the JP8 AAAB requirement in response to RFP SPE605-19-R-0212.  Strategic Social Co. (Strategic) submitted the lowest price, and Varec Inc. (Varec), submitted the second lowest price for this CLIN.  The contracting officer determined it was in the best interest of the government to split the requirement and awarded 50% of the work to Strategic (SPE605-20-D-9507), and 50% of the work to Varec (SPE605-20-D-9508).  See Table 1 below for additional details of the source selection results of RFP SPE605-19-R-0212, that are relevant to this request:

**Table 1**

| SPE605-19-R-0212 for CLIN 0007 (JP8 to AAAB) | | | | | |
|---|---|---|---|---|---|
| **Contract/Position** | **Offeror** | **Offer Price** | **Margin** | **Diff** | **Comment** |
| SPE60519R0212 | BRP | $1.805952[1] | N/A | N/A | The base reference date was 3/01/2019 |
| SPE60520D9507 | Strategic | $3.205952 | $1.400000 | N/A | Terminated for Convenience |
| SPE60520D9508 | Varec | $3.355952 | $1.550000 | $0.150000 | Terminated for Convenience |
| SPE60520D9518 | DGCI | $3.369017 | $1.563065 | $0.013065 | DGCI awarded due to Terminations |

Note 1 - PLATTS Jet Kero FOB Arab Gulf Cargo is the price indicator.

Table 1 shows the offer prices of the three (3) lowest bids for the referenced CLIN.  This price was calculated by adding the margins for each offer to the Base Reference Price (BRP) of $1.805952 per USG.  The BRP is the prior monthly average of Platts Jet Kero FOB Arab Gulf Cargo on March 3, 2019.   The "Diff" is the difference between the offeror's margin and the margin of the offeror that submitted the next lowest price.  Varec offeror price of $3.355952 had a margin of $1.550000, that was $0.150000 higher than Strategics' margin of $1.400000.  DGCI submitted the third lowest price of $3.3690170 per gallon, and their margin of $1.563065 was $0.0130650 higher than Varec's margin, the offeror that submitted the second lowest price. The margin is constant for the duration of the contract and should include all the vendor's cost (i.e. fuel, storage), overhead (i.e. lease, utilities), and profit.  The level of risk should also be factored in each element of the vendor's margin.

On March 24, 2020, contract number SPE605-20-D-9507 (Strategic) valued at $305,302,522.84, (which  included $88,368,096.96 for the JP8 to AAAB CLIN), and contract number SPE605-20-D-9508 (Varec) valued at $226,440,951.86 (which included $89,704,596.96 for JP8 to AAAB CLIN), were terminated for the convenience of the government.  On March 24, 2020, the contracting officer sent a request to DGCI, asking them to re-validate their prices that were submitted in response to the solicitation.  The contracting officer made the following clarification to ensure that DGCI understood the government's position:

> "Just to clarify, DLA Energy is re-procuring and DGCI can **submit new pricing in accordance with the same terms and conditions as SPE605-19-R-0212.**  Please note that if DGCI chooses not to change prices then you can state no change to DGCI prices."

On March 30, 2020, DGCI confirmed that prices submitted under the solicitation were still valid. The offer price of $3.3690170 per gallon was deemed fair and reasonable by the contracting officer, and on April 8, 2020, contract number SPE605-20-D-9518 valued at $315,524,391.72 (which included $180,107,648.82 to deliver a total of 53,460,000 US Gallons to AAAB), was awarded to DGCI. DGCI has not provided price information for March or April 2020, so it is unknown what the price difference between OPDC and Platts was at the time it validated its offer price.

**Discussion: Areas of Agreement and Disagreement**

1)  DGCI, claims the contract's PLATTS reference price indicator (i.e., original market indicator) consistently and substantially failed to reflect market conditions and that DLA's EPA clause is intended to remedy the problem by providing a price adjustment through the substitution of the contract's market indicator with an "appropriate and comparable" market price indicator, which, is OPDC.

    After a detailed analysis of the OPDC price history that was provided by DGCI and comparing it to PLATTS Arab Gulf Jet Fuel prices, DLA Energy acknowledges that OPDC prices were higher than PLATTS. A complete analysis of the price history of the two prices was performed, and the OPDC prices were approximately $0.72 higher than the PLATTS price for the period of November 2021 through October 2023. However, for the 12 months preceding the base reference date of March 1, 2019, on average the OPDC prices was approximately $0.65 higher than the PLATTS price. As outlined above, DGCI admittedly was aware of the price difference and factored this into its offer, but chose to do so using an OPDC letter from February 2019 quoting the pricing "for one Liter" rather than using information from its actual purchases in March, September, and October 2019 or the previous 12 month average, all of which were higher than the $0.3896 it built into its offer. It is the offer's responsibility to understand their offer price and the market conditions, and the fact that OPDC prices are higher than PLATTS prices. By failing to request the use of an alternate escalator or challenge the use of the PLATTS indicator during the solicitation and evaluation process, DGCI assumed the risk associated with PLATTS, which it knew was lower than OPDC pricing. Furthermore, during the initial months of the contract through October 2021, the OPDC price was about $0.389144 higher on average than the escalator price, which is significantly lower than the historical price difference. As a result, the overall average price difference during the entire contract was within the historical average.

    The tables below show the average price differences, the minimum and maximum prices for the 12-month period preceding the base reference date (Table 2 - Period 1), the period between the base reference date and the contract award (Table 3 – Period 2), the period from the start of the contract to when DGCI claims the escalator failed (Table 4 - Period 3), and finally the start date of the alleged failure to the contract expiration date (Table 5 - Period 5).

**Table 2**

| Period 1 - 12 Months Before BRD | | | | |
|---|---|---|---|---|
| **Dates** | **OPDC $/liter** | **OPDC Price** | **PLATTS Price** | **Price Diff** |
| 2/8/2018 | $0.670000 | $2.536225 | $1.893452 | $0.642773 |
| 3/12/2018 | $0.640000 | $2.422662 | $1.866667 | $0.555995 |

DGCI-00000101

| Period 1 - 12 Months Before BRD | | | |
|---|---|---|---|
| **Dates** | **OPDC $/liter** | **OPDC Price** | **PLATTS Price** | **Price Diff** |
| 4/8/2018 | $0.640000 | $2.422662 | $1.839444 | $0.583218 |
| May 2018 | No OPDC Pricing Data Available | | $1.987744 | |
| 6/3/2018 | $0.730000 | $2.763349 | $2.101077 | $0.662272 |
| 7/12/2018 | $0.710000 | $2.687641 | $2.027976 | $0.659665 |
| 8/15/2018 | $0.710000 | $2.687641 | $2.038063 | $0.649578 |
| 9/9/2018 | $0.700000 | $2.649787 | $2.041088 | $0.608699 |
| 10/9/2018 | $0.720000 | $2.725495 | $2.142881 | $0.582614 |
| 11/5/2018 | $0.770000 | $2.914766 | $2.220797 | $0.693969 |
| 12/23/2018 | $0.700000 | $2.649787 | $1.928243 | $0.721544 |
| 1/8/2019 | $0.590000 | $2.233392 | $1.630291 | $0.603101 |
| 2/6/2019 2019 | $0.58000 | $2.195539 | $1.649318 | $0.546221 |

Average Difference = $0.625804
Minimum = $0.546221
Maximum = $0.721544

Table 3

| Period 2 - Base Reference Date to Award | | | |
|---|---|---|---|
| **Dates** | **OPDC $/liter** | **OPDC Price** | **PLATTS Price** | **Price Diff** |
| 3/5/2019 | $0.610000 | $2.309101 | $1.805952 | $0.503149 |
| 4/1/2019 | | | $1.853492 | |
| 5/1/2019 | | | $1.924637 | |
| 6/1/2019 | No OPDC Pricing Data Available | | $1.892302 | |
| 7/1/2019 | | | $1.728271 | |
| 8/20/2019 | $0.620000 | $2.346954 | $1.825424 | $0.521531 |
| 9/19/2019 | $0.590000 | $2.233392 | $1.728536 | $0.504857 |
| 10/2/2019 | $0.620000 | $2.346954 | $1.804796 | $0.542159 |
| 11/4/2019 | $0.610000 | $2.309100 | $1.724827 | $0.584274 |
| 12/05/2019 | $0.610000 | $2.309100 | $1.721893 | $0.587208 |
| 1/1/2020 | | | $1.784683 | |
| 2/1/2020 | | | $1.730862 | |
| 3/1/2020 | No OPDC Pricing Data Available | | $1.450393 | |
| 4/1/2020 | | | $0.861991 | |

Average Difference = $0.548901
Minimum = $0.503149
Maximum = $0.587208

Table 4

| Period 3 – Award to October 2021 | | | |
|---|---|---|---|
| **Dates** | **OPDC $/liter** | **OPDC Price** | **PLATTS Price** | **Price Diff** |
| 5/10/2020 | $0.220000 | $0.832790 | $0.367574 | $0.465216 |
| 6/21/2020 | $0.220000 | $0.832790 | $0.568836 | $0.263954 |
| 7/20/2020 | $0.300000 | $1.135623 | $0.938474 | $0.197149 |
| 8/25/2020 | $0.370000 | $1.400602 | $1.012132 | $0.388470 |
| 9/2/2020 | $0.340000 | $1.287039 | $0.986333 | $0.30706 |
| 10/13/2020 | $0.330000 | $1.249185 | $0.897251 | $0.351934 |
| 11/1/2020 | $0.350000 | $1.324894 | $0.954253 | $0.370640 |
| 12/20/2020 | $0.370000 | $1.400602 | $1.047653 | $0.352949 |
| 1/7/2021 | $0.410000 | $1.552018 | $1.231277 | $0.320741 |
| 1/27/2021 | $0.440000 | $1.665580 | $1.231277 | $0.434303 |
| 3/24/2021 | $0.490000 | $1.854851 | $1.514474 | $0.340377 |

| Period 3 – Award to October 2021 | | | | |
|---|---|---|---|---|
| Dates | OPDC $/liter | OPDC Price | PLATTS Price | Price Diff |
| 4/22/2021 | $0.560000 | $2.119830 | $1.542340 | $0.577490 |
| 5/4/2021 | $0.530000 | $2.006267 | $1.538503 | $0.467764 |
| 6/8/2021 | $0.530000 | $2.006267 | $1.666930 | $0.339337 |
| 7/25/2021 | $0.590000 | $2.233392 | $1.769545 | $0.463846 |
| 8/2/2021 | $0.610000 | $2.309100 | $1.802120 | $0.506980 |
| 9/5/2021 | $0.550000 | $2.081976 | $1.712727 | $0.369248 |
| 10/4/2021 | $0.620000 | $2.346954 | $1.853474 | $0.493480 |

Average Difference = $0.389144
Minimum = $0.197149
Maximum = $0.577490

Table 5

| Period 4 – Months of Alleged Failure | | | | |
|---|---|---|---|---|
| Dates | OPDC $/liter | OPDC Price | PLATTS Price | Price Diff |
| 11/10/2021 | $0.690000 | $2.611933 | $2.166984 | $0.444949 |
| 12/7/2021 | $0.680000 | $2.574079 | $2.072630 | $0.501448 |
| 1/11/2022 | $0.620000 | $2.346954 | $1.934686 | $0.412268 |
| 2/14/2022 | $0.730000 | $2.763349 | $2.231871 | $0.531479 |
| 3/15/2022 | $0.780000 | $2.952620 | $2.482077 | $0.470543 |
| 4/24/2022 | $1.020000 | $3.861118 | $3.097019 | $0.764100 |
| 5/11/2022 | $1.080000 | $4.088243 | $3.117095 | $0.971148 |
| 6/23/2022 | $1.150000 | $4.353222 | $3.276341 | $1.076881 |
| 7/25/2022 | $1.270000 | $4.807471 | $3.779481 | $1.027990 |
| 8/8/2022 | $1.050000 | $3.974681 | $3.090381 | $0.884300 |
| 9/27/2022 | $0.990000 | $3.747556 | $3.030357 | $0.717199 |
| 10/16/2022 | $0.970000 | $3.671848 | $2.747814 | $0.924034 |
| 11/24/2022 | $0.970000 | $3.671848 | $2.853405 | $0.818443 |
| 12/19/2022 | $0.960000 | $3.633994 | $2.780097 | $0.853896 |
| 1/8/2023 | $0.840000 | $3.179744 | $2.478209 | $0.701536 |
| 2/8/2023 | $0.880000 | $3.331161 | $2.627657 | $0.703504 |
| 3/28/2023 | $0.800000 | $3.028328 | $2.447202 | $0.581126 |
| 4/9/2023 | $0.750000 | $2.839058 | $2.250145 | $0.588913 |
| 5/10/2023 | $0.730000 | $2.763349 | $2.197293 | $0.566056 |
| 6/6/2023 | $0.700000 | $2.649787 | $2.014448 | $0.635339 |
| 7/4/2023 | $0.720000 | $2.725495 | $2.065321 | $0.660174 |
| 8/6/2023 | $0.760000 | $2.876912 | $2.286281 | $0.590630 |
| 9/17/2023 | $0.940000 | $3.558285 | $2.694297 | $0.863989 |
| 10/5/2023 | $1.000000 | $3.785410 | $2.841571 | $0.943839 |

Average Difference = $0.718074
Minimum = $0.412268
Maximum = $1.076881

DLA Energy acknowledges that the difference between the PLATTS indicator and the OPDC price varied during the contract, but these values are expected to vary. The tables above show how the average, the minimum and the maximum price difference varied over time. Although there were some changes, these changes are not significant or consistent and DGCI's bid price should have compensated for these changes because DGCI was aware of the historical variation. The average Price Difference for Period 1 is $0.625804 and for Period 2 is $0.548901420651. These two periods represent the 12 months prior to the base reference price in the solicitation and for the months from the base reference date until the

award. DGCI had this information because it was performing on contracts for DLA and purchasing fuel from OPDC during both periods. For the initial period of the contract from May 2020 until November 2021, the difference between OPDC and PLATTS was lower than historical averages at $0.389144 and for Period 4, the months DGCI alleges the index failed, it was slightly higher than average at $0.718074. However, the average difference between PLATTS and OPDC for the entire length of the contract was $0.577104, which is consistent with the period prior to the solicitation base reference date and the period until contract award. Accordingly, although the difference changed over time, it stayed within the historical average.

The economic price adjustment clause and use of the PLATTS indicator was not designed to match the precise, actual cost of the fuel, but rather was an aggregate index to generally account for how the prices will vary over time. Bidders are expected to take reasonable consideration for changes in the market when pricing their offers. The use of supplier notice for the economic price adjustment on a contract is only necessary when the means used to predict fluctuation in fuel prices cannot be done using a fuel price publication like PLATTS. However, on this contract both the government and vendors agreed to the method on how the fuel prices would escalate. All offerors, including DGCI, agreed to assume the risk associated with the price variance between OPDC pricing and the PLATTS indicator, when they submitted an offer without requesting a change in the escalator. DGCI was aware of the price difference between OPDC and PLATTS and was aware that fuel had to be purchased through OPDC, which has control over prices. However, DGCI chose not to object to the terms of the solicitation during the procurement process. Rather, it used its knowledge about the OPDC pricing and process and factored that into its offer as other offerors likely did. Therefore, changing the escalator and how the fuel price escalates now, violates the procurement integrity of the acquisition process, because all offerors were not allowed to submit their bid price with the understanding that the prices would escalate using actual OPDC pricing verse the PLATTS indicator.

2) DGCI referenced paragraph (g)(4) of clause B19.02 ECONOMIC PRICE ADJUSTMENT (OVERSEAS) (DLA ENERGY JAN 2012), requesting that the contract be modified to revise the contract's PLATTS market indicator to substitute Iraq's OPDC prices effective November 2021 through to October 2023. On October 12, 2023, in response to DLA Energy letter requesting additional data, DGCI stated:

> "First, paragraph (c)(4) of the of the EPA does not state that the notice must be in "advance." Rather, Clause states "... the Contractor shall notify the Contracting Officer of any changes in the reference price in writing within 15 calendar clays from the date thereof."

> Adding: "It is a long-standing rule in government contracting that a requirement for timely notice does not preclude a contractor's submission so long as the Government is not prejudiced, or timely notice would have been useless."

DLA Energy disagrees with DGCI's assessment of the clause. DGCI failed to request a price adjustment at the time of the claimed failure. DGCI's argument that there was no prejudice

presumes that DLA Energy had determined the escalator had failed, DLA Energy would have necessarily continued with DGCI under an OPDC escalator. As explained above, to ensure the integrity of the acquisition process, DLA Energy might have terminated the contract and resolicited to give other offers the chance to bid on these fundamentally different terms, had it determined that the escalator failed. Additionally, DLA Energy references (g)(4) of the same clause and highlights the following:

> "**The Contracting Officer** determines that the reference price consistently and substantially failed to reflect market conditions— **the parties shall mutually agree upon an appropriate and comparable substitute for determining the price adjustment described hereunder.**"

To the extent that the clause does not explicitly require the contractor to request a change in the escalator within a certain time, it is because the clause does not include *any* process for the contractor to submit a request to change the escalator. Rather, only the Contracting Officer may determine that an escalator has failed and seeks a change through mutual agreement. Therefore, to the extent any process for the contractor under the clause exists, I determine that DGCI should have requested the price adjustment when the index failed during contract performance and not approximately a year and a half after the alleged point of failure, near the end of the contract. Failure to do so in a timely manner, negatively affected the Government. DGCI's decision to continue performance during this period when the PLATTS indicator had allegedly failed, rather than request a price index change, constitutes acceptance of the fuel fluctuation under the PLATTS index.

3) This claim submitted by DGCI would change the scope of the contract because it would be a significant change from an escalator based on the PLATTS indictor, to a "supplier notification" method using the actual cost of the fuel. The "Supplier Notification" is a method that reduces the risk associated with fuel pricing when an index-based escalator cannot accurately reflect the changes in the cost of the fuel over time. However, the "Supplier Notification" method should be identified at the pre-award stage of the acquisition process, to ensure all offerors have the opportunity to submit a bid price with the understanding that a "Supplier Notification" method will be used to escalator fuel prices. Additionally, the "Supplier Notification" method is only used as a last resort. The process requires constant contract administration because actual OPDC pricing must be received in a timely manner, and the vendor monthly pricing must be evaluated, confirmed and uploaded to DLA Energy Prices to Web. Prices to Web is a DLA Energy web-based tool used by vendors to see the fuel price that is in effect for a given delivery date under a specific contract, order and contract line-item number. This website automatically updates vendor prices based on many subscriptions based published price assessments, like PLATTS. PLATTS' Arab Gulf March 2019 Reference Price Indicator was approved for use on this contract, and when compared to the average price difference over the entire contract, the indicator successfully reflected how the fuel prices fluctuated over the entire period of performance of the contract.

DGCI's claim would effectively increase its offer price from $3.369017 per gallon, to $3.688901 per gallon. Table 5 also shows how the DGCI "Adjusted Price" is calculated by

DGCI-00000105

taking the total value of the claim and dividing it by the total amount of fuel delivered during this period. This value represents the price per US gallon for the claimed price adjustment.

**Table 5**

| DGCI Adjusted Price | |
|---|---|
| Total Quantity Delivered = | 22,919,712 USG |
| Value of Claim = | $7,331,663.71 |
| DGCI Offer Price + Claim per $/USG = | $3.688901Per US Gallon |
| or ($3.369017) + ($7,331,663.71/ 2,2919,712) | |

DGCI's failure to properly account for fluctuations in the fuel prices doesn't warrant a price adjustment. DGCI was aware of the historical difference between OPDC and PLATTS at the time of bid submission and was aware of factors that could cause further fluctuation. DGCI's bid price should have mitigated the risk associated with an increase in the price discrepancies and DLA Energy is not responsible for DGCI's failure to adequately account for the risk associated with increased price discrepancies.

4) DGCI stated it could not use traditional commercial purchase agreements, leverage economies of scale, or the free marketplace to establish its supply chain given that Iraqi law requires contractors to purchase the jet fuel from a single source - the Iraqi government's OPDC. DGCI also claims, the Iraqi government's OPDC has a monopoly on jet fuel sold in Iraq, resulting in a non-competitive marketplace in Iraq for the purchase of jet fuel. However, DGCI was aware of these factors at the time of bidding and even noted its familiarity with the OPDC process in its Technical Proposal. Consequently, when determining its actual costs and preparing its offer amount, DGCI considered the OPDC March 2019 price and attempted to include the difference between the OPDC March 2019 price and the PLATTS Jet Kero FOB Arab Gulf Cargo March 2019 reference price ($1.805952 per US Gallon). However, as discussed above, DGCI did so ineffectively or chose to use a lower price difference than the historical average or the price it actually paid for its fuel in March 2019.

DGCI had the opportunity to request an exception to the PLATTS indicator in its response to the solicitation but chose not to. DGCI stated on page 16 of 38 of its technical proposal, paragraph 1.1.5. Request for Exception and Deviations, **"DGC International will fully comply with all terms and conditions of this solicitation. Therefore, we request no exceptions or deviations in this area."** DGCI could have also protested the solicitation to argue that the PLATTS index was improper, but did not do so. In addition, prior to the award of this contract, SPE605-20-D-9518, DGCI could have revised its prices multiple times, including when asked to re-validate pricing after Strategic and Varec's contracts were terminated. DGCI should have reviewed the history of the prices and considered a more robust representation of the historical relationship between Platts and OPDC pricing when formulating its price.

DGCI submitted relevant past performance data, claiming to have delivered an estimated 30 million gallons of JP8 in many years of providing fuel in the region. RFP SPE605-19-P-0212 clearly outlined the Prime Minister National Operations Center (PMNOC) process required to do business in the region. On page 13 of 18, of the Price and Past Performance proposal, **DGCI stated it had implemented a cost and finance managements system to: meet the**

**T&Cs of the contract, innovate alternative methods/processes to reduce cost, submit accurate invoices and other required documents to avoid variance in cost.**

From the start of this contract, the OPDC price was higher than the PLATTS price indicator. The original market conditions matched the conditions averaged over the contract. As shown in Table 7 below, the average difference between the two prices went from $0.625804 in the 12 months prior to the base reference date (Period 1), to $0.548901 in the months during bidding prior to contract award (Period 2) and averaged $0.577104 during the life of the contract. This average price difference is therefore similar to the historical price difference. Although the average difference of $0.718074 was higher during the alleged period of failure (Period 4), it was not substantially higher than $0.625804, which is the difference for the PLATTS indicators for a 12-month period prior to the base reference date. This difference was also offset by the early period in the contract in which the average price difference was lower than the historical average.

Table 7

| Market Conditions – Price Difference | | | | | |
|---|---|---|---|---|---|
| **Dates** | **Period 1** | **Period 2** | **Period 3** | **Period 4** | **Contract Avg.** |
| Avg Difference | $0.625804 | $0.548901 | $0.389144 | $0.718074 | $0.577104 |
| Min Difference | $0.546221 | $0.503149 | $0.197149 | $0.412268 | $0.197149 |
| Max Difference | $0.721544 | $0.587208 | $0.577490 | $1.076881 | $1.076881 |

**Contracting Officer's Determination**

Based on the information listed above, DGCI was aware of OPDC prices as it relates to the PLATTS pricing, and the risk associated with increased price discrepancies. It was the vendor's responsibility to know the market conditions and to take necessary steps to mitigate the risk associated with changes in the market or to request an alternate escalator or challenge the solicitation terms prior to award. Failure to accurately predict the changes in the market conditions and to reasonably factor the discrepancies between the PLATTS indicator and the OPDC pricing into their offer bid price, after accepting the use of the PLATTS indicator, is not a valid reason for a price adjustment. DGCI assumed the risk associated with performance under the terms and conditions of the contract. The price discrepancies between the PLATTS indicator and OPDC pricing on average were not significant or consistent to justify an economic price adjustment and substitution of the price index.

The contracting officer therefore denies DGCI's claim under the Contract Disputes Act of 1978 in the amount of **$7,331,663.71** for the difference between the Platts and OPDC prices for JP8 fuel delivered under contract number SPE605-20-D-9518, CLIN 0006, between the months of November 2021 through October 2023.

**Notice of Appeals Rights**

This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken.

DGCI-00000107

The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regards to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board small claim procedure for claims of $50,000 or less or, in the case of a small business concern (as defined in the Small Business Act and regulations under that Act), $150,000 or less; or Accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in 41 U.S.C.7102(d), regarding Maritime Contracts) within 12 months of the date you receive this decision.

Subject to the appeal times frames specified above, you may request this dispute be resolved using alternative dispute resolution procedures.

Sincerely,

PATTERSON.AU GUSTUS.JR.104 7232046
Digitally signed by PATTERSON.AUGUSTUS.JR. 1047232046
Date: 2025.03.20 05:42:56 -04'00'

Augustus Patterson Jr.
Contracting Officer
Ground Fuels Division IV
DLA ENERGY

Source Selection Information See FAR 2.101 and 3.104

DGCI-00000108